**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent, | ) ) ) | |
| vs. | ) | Case No. 05 C 6363 |
| **VINCENTE OJEDA,** | ) ) ) | |
| Movant, | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Vincente Ojeda has moved under 28 U.S.C. § 2255 to vacate his sentence, claiming it was imposed in violation of his Sixth Amendment rights. He alleges that his appellate counsel's failure to raise a particular issue on appeal constituted ineffective assistance of counsel. On June 8, 2006, the Court held an evidentiary hearing on Ojeda's motion. For the following reasons, the Court denies Ojeda's § 2255 motion.

### Facts

Ojeda's arrest followed a joint Drug Enforcement Agency / Illinois State Police narcotics investigation. The DEA / ISP task force initially learned of a drug-dealing conspiracy when Missouri state police pulled over Ojeda's co-defendant Pedro Gutierrez's truck for a traffic violation and found a large amount of marijuana in the truck. Gutierrez cooperated with the task force and led them to a warehouse in Blue Island, Illinois. When the police entered the warehouse after observing it for some time, Ojeda and six other individuals were in the process of moving approximately 4,000 kilograms of marijuana from one truck to another. A federal grand jury indicted all eight individuals on two counts of violating 21 U.S.C. §§ 841(a)(1) and

846.

Ojeda pled guilty to the first count of the indictment, which alleged conspiracy to distribute, and to possess with intent to distribute, over 4,000 kilograms of marijuana. In the presentence report, the Probation Office recommended a base offense level of 34 under the Sentencing Guidelines. The Probation Office also recommended a two-level enhancement for obstruction of justice and no downward adjustment for acceptance of responsibility.

At the sentencing hearing, Ojeda's attorney objected to two aspects of the Probation Office's proposed Sentencing Guideline calculation. First, he argued that Ojeda was entitled to a downward adjustment due to his allegedly minor role in the offense. Second, he argued that Ojeda was eligible for a downward adjustment in his offense level based on the Guidelines' "safety valve" provision. *See* U.S.S.G. § 5C1.2. This provision allows an offender to receive a reduced sentenced upon meeting several conditions, including providing a truthful statement regarding his involvement in the offense. The government argued that the safety valve did not apply because Ojeda had lied to investigators by, among other things, minimizing his involvement in the offense. Ojeda claimed that he was only at the warehouse to unload the marijuana from one truck to another. The government pointed to the grand jury testimony of Ojeda's two co-defendants, which indicated that he was more than a simple laborer and was supervising the activities at the warehouse. In addition, the government argued that Ojeda had given varying explanations concerning how he initially became involved in the conspiracy and how he had arrived at the Blue Island warehouse.

The Court found that Ojeda had established that he was entitled to a two-level downward adjustment for having a minor role in the offense. Though the Court acknowledged that Ojeda

had a significant role in the operation at the warehouse, we concluded that the conspiracy as a whole went significantly beyond the unloading of marijuana at the warehouse and concluded that Ojeda's role in the overall conspiracy was a minor one. Sept. 10, 2003 Tr. at 25-27. The Court denied, however, Ojeda's request for the safety valve adjustment. We determined that Ojeda had not "come entirely clean regarding his role" in the offense. *Id.* at 24. Specifically, the Court concluded, Ojeda had falsely attempted to minimize his activities at the warehouse. *Id.* at 25.

The Court determined that Ojeda's offense level was 34, yielding a sentencing range of 151 to 188 months imprisonment. We imposed a sentence of 151 months, at the low end of the range.[1]

On appeal, Ojeda was represented by a different appointed attorney. The attorney reviewed the record and determined that the Court had made an error in determining Ojeda's offense level. Because the Court had determined that Ojeda had only a minor role in the conspiracy, his offense level should have been capped at 30. *See* U.S.S.G. § 2D1.1(a)(3). Ojeda also wanted to appeal the Court's ruling on the safety valve issue, but counsel concluded that this was a losing proposition and did not raise the issue on appeal. The Seventh Circuit agreed with Ojeda that his offense level should have been capped at 30 and remanded the case for resentencing consistent with its ruling.

On remand, Ojeda, represented by a third appointed attorney, again raised the safety valve issue. The Court determined, however, that the remand of the case by the Court of Appeals was limited to the issue of resentencing Ojeda under the new offense level. With an offense level of 30, Ojeda's sentencing range was 97 to 121 months imprisonment. The offense,

---

[1] At the time of Ojeda's sentencing, the Guidelines were considered mandatory.

however, carried a mandatory minimum prison term of ten years, or 120 months. The Court imposed the mandatory minimum sentence.

## Discussion

Section 2255 allows a federal prisoner to challenge his sentence if it was imposed in violation of the Constitution. Ojeda claims his appellate lawyer violated his Sixth Amendment right to effective assistance of counsel by failing to raise the safety valve issue. *See Evitts v. Lucey,* 469 U.S. 387, 396 (1985) (Sixth Amendment right to effective assistance of counsel extends to appeals taken as of right). To show ineffective assistance, Ojeda must demonstrate this his lawyer was deficient in her performance and that her error was prejudicial. *See Strickland v. Washington,* 466 U.S. 668, 692 (1984); *Morris v. United States,* 264 F.3d 726, 727 (7th Cir. 2001). Courts are free to address either part of the test first; often it is simpler to address first whether the petitioner was prejudiced by counsel's allegedly deficient performance. *Strickland,* 466 U.S. at 697.

To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In this case the question is whether there is a reasonable probability that the Seventh Circuit would have overturned this Court's denial of the safety valve adjustment had Ojeda's appellate attorney raised the issue.

The safety valve provision is designed to allow first time narcotics offenders with a small role in an offense the opportunity to avoid a lengthy mandatory minimum sentence by cooperating with the government. *United States v. Marin,* 144 F.3d 1085, 1090 (7th Cir. 1998); *United States v. Arrington,* 73 F.3d 144, 148 (7th Cir. 1996). To be eligible, the defendant must

show that he meets five elements. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. *See United States v. Ponce,* 358 F.3d 466, 468 (7th Cir. 2004). In this case, the only element in question was the fifth, which requires the defendant "not later than the time of the sentencing hearing, [to] ... truthfully provide[] to the Government all information and evidence the defendant ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan ...." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). At Ojeda's first sentencing hearing, the Court found that Ojeda had failed to prove this element because he had falsely minimized his role in the offense in his statements to government agents. The Court's determination was based on factual findings arising from Ojeda's various statements to the authorities and the statements of his co-defendants.

In determining that Ojeda had falsely minimized his role in the activities at the warehouse, the Court determined that there were inconsistencies in Ojeda's varying statements to the authorities, and that there were inconsistences between his version and those of his co-defendants. *See* Sept. 10, 2003 Tr. at 25. In his initial statements to the police, Ojeda maintained that he did not know the man who approached him about the narcotics shipment and that he was given specific information about when they would unload the shipment; he also stated that he was only paid to unload the boxes of marijuana. Later, however, the government confronted Ojeda with facts suggesting that he had been involved in a similar shipment a few months earlier and that he could not possibly have known exactly when the later shipment was arriving, because the DEA had delayed it. Ojeda then changed his story, stating that someone informed him of the second shipment the day before the unloading was to occur. In addition, Ojeda's final statement was inconsistent with the grand jury testimony of two of his co-

5

defendants regarding his role in the unloading; both stated that Ojeda had given orders to other participants about unloading the marijuana from one truck to the other. The Court found the co-defendants' statements more believable than Ojeda's. For these reasons, the Court found that Ojeda had not given "a truthful recounting of all information and evidence that he [had] concerning the offense ...." *Id.*

Ojeda had failed to show that there is a reasonable probability that the Seventh Circuit would have overturned this Court's safety valve ruling had his counsel raised it on appeal. On appeal, a denial of the safety valve adjustment is reviewed for clear error. *Ponce,* 358 F.3d at 468; *Marin,* 144 F.3d at 1091. The Seventh Circuit rarely overturns denials of the safety valve, particularly when the denial arises from a determination of the truthfulness of the defendant's statements to government agents. *See, e.g., United States v. Montes,* 381 F.3d 631, 634 (7th Cir. 2004) (affirming denial of safety valve based on defendant's minimization of role in narcotics conspiracy); *Ponce,* 358 F.3d at 468 (affirming denial of safety valve based on trial court's crediting of testimony of government agents over that of defendant); *Marin,* 144 F.3d at 1091 (affirming denial of safety valve based on defendant's change of his statement upon being presented with contradictory evidence); *Arrington,* 73 F.3d at 148 (affirming denial of safety valve when defendant provided government only with information it already had).

Under the clear error standard, if there is any basis in the record supporting the district court's denial of the safety valve, the Court of Appeals will not overturn the denial. *See Montes,* 381 F.3d at 634; *Ponce,* 358 F.3d at 368; *Arrington,* 73 F.3d at 148. Ojeda has failed to show that the Court's finding that he had not been fully candid was wholly unsupported in the record. As his appellate counsel concluded, the Court's finding was amply supported in the

record presented at the time of the initial sentencing. For this reason, Ojeda has not shown that there is a reasonable probability that the Court's finding would have been overturned had his appellate counsel chosen to appeal it.

## Conclusion

For the reasons stated above, the Court denies Vincente Ojeda's motion under 28 U.S.C. § 2255. The Court directs the Clerk to enter judgment denying Ojeda's motion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 5, 2006